**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: JOSEPH GRASSO,** | **Chapter 11** |
| **Debtor.** | **Bky. No. 12-11063 MDC** |
| **MARSHALL J. KATZ,** | |
| **Plaintiff,** | |
| **v.** | **Adv. No. 12-0392 ELF** |
| **JOSEPH GRASSO,** | |
| **Defendant.** | |

# O R D E R

**AND NOW, WHEREAS:**

A. Debtor Joseph Grasso ("the Debtor") filed a voluntary petition under chapter 11 in this court on February 6, 2012.

B. On May 11, 2012, Plaintiff Marshall J. Katz ("Katz") filed an adversary complaint against the Debtor, seeking a determination that his claims against the Debtor are nondischargeable pursuant to 11 U.S.C. §§523(a)(2) and (a)(6).

C. On June 26, 2012, the Hon. Magdeline D. Coleman, the judge presiding over the Debtor's bankruptcy case, entered an order reassigning the adversary proceeding to the undersigned judge. (Adv. No. 12-392, Doc. # 4).

D. On October 1, 2012, Katz filed a motion for summary judgment ("the Motion") (Adv. No. 12-392, Doc. # 17), to which the Debtor responded, (id., Doc. #'s 22, 23, 26).

* * * *

E. In September 2007, Katz filed an action ("the State Court Action") against the Debtor and other defendants in the Circuit Court, Cook County, Illinois ("the State Court").

F. The other named defendants in the State Court Action were: Kevin C. Meakim ("Meakim"), Nicholas Bayer ("Bayer"), Robert D. Carroll ("Carroll"), Walnut Street Capital, LLC ("WSC"), Saxby's Coffee, Inc. ("SCI"), Saxby's Coffee Worldwide, LLC ("SCW"), and Coffee Shops International, LLC ("CSI").

G. In his amended complaint, Katz asserted claims against the Debtor for tortious interference with contract, procuring breach of fiduciary duty, fraudulent transfer and unjust enrichment.

H. Generally, Katz alleged that the defendants, individually and in concert with each other, engaged in an improper course of conduct that was designed to transfer SCI's assets to one or more of the entity-defendants, without payment of fair consideration, thereby stripping SCI of its substantial value to the financial detriment of Katz in his capacities as both a creditor and a shareholder of SCI.

I. On June 2, 2009, the State Court entered an order of default against Bayer and SCI.

J. On August 5, 2009, SCW filed a chapter 11 bankruptcy case in this court. The bankruptcy filing stayed the State Court Action against SCW and no default was entered against that entity.

K. On October 16, 2009, the State Court entered an order of default against CSI.

L. On November 12, 2009, the State Court entered an order of default against the Debtor, Meakim, Carroll and WSC.[1]

---

[1] In a Memorandum Opinion issued in November 2010, the State Court explained the basis for the entry of the default against the Debtor as follows:

(continued...)

M. On December 4, 2009, the bankruptcy court issued a preliminary injunction, which, inter alia, restrained Katz from further prosecuting the State Court Action against the Debtor (among others). (See Adv. No. 09-340, Doc. # 27).

N. On October 27, 2010, the bankruptcy court dissolved the preliminary injunction. (Id., Doc. # 96).

O. On November 10, 2010, after conducting a prove-up hearing, the State Court entered a judgment in favor of Katz and against SCI, CSI, WSC and Carroll in the amount of

---

[1](...continued)

> On April 15, 2009 counsel for defendants was given leave to withdraw. Defendants were given until May 6, 2009 to appear individually or through counsel and the case was continued for status to May 14,2009. On May 14,2009 new counsel appeared for defendants and the case was continued to June 2, 2009. . . . **On October 16, 2009 . . . [a]ttorneys for Defendants Meakim, Grasso, Carroll, SCW and WSC moved and were given leave to withdraw**. The case was continued to November 6, 2009 for defendants to appear personally or through counsel. **On November 12, 2009 . . . [d]ue to their failure to appear personally or through counsel, default was entered in favor of Katz and against Grasso, Meakim and Carroll** on counts III, V, VI and VII of the amended complaint and against WSC on counts I, II, III, VI and VII of the amended complaint. The case was continued to November 16, 2009 for prove-up.

(State Court Memorandum Opinion dated Nov. 3, 2010) (Motion, Ex. 1) (emphasis added).

The State Court subsequently described the default as having been entered as a sanction, rather than for the mere failure to appear: "[T]he default was entered due to [the] principals' case-long history of frustrating orderly litigation." (State Court Final Judgment Order dated Feb. 16, 2012) ("the Feb. 16th Judgment") (Motion, Ex. 1).

The later description undoubtedly is more precise. This was not a traditional default judgment for the simple failure to file a timely response to a complaint. Indeed, the Debtor filed a response to the original complaint. (See Katz Reply Br., Ex. D.). Given the Debtor's obvious intention to defend the action (as evidenced by his filing a response to the original Complaint), it is likely that the State Court would have granted the Debtor some leeway (perhaps treating the original response as a response to the Amended Complaint), rather than entering a default, if the Debtor were an "ordinary" pro se party. It is clear that the State Court entered the default because it viewed the Debtor's failure to file a response to the Amended Complaint as "the last straw" in what it perceived to be an ongoing series of dilatory tactics by the defendants (including the Debtor).

$23,887,032.63 ("the Nov. 10th Judgment").[2] (See Feb. 16th Judgment).

P. Carroll and CSI both appealed the Nov. 10th Judgment. (Katz Br. at 11).[3]

Q. The State Court scheduled a prove-up hearing for February 7, 2012 to consider the entry of a money judgment in connection with the default previously entered against the Debtor, Meakim and Bayer.

R. On the day before the hearing, the Debtor and Bayer each filed a personal bankruptcy case in this district, thereby staying the prove-up hearing as to them. (See Bky. Nos. 12-11063, 12-11083).[4]

S. The February 7, 2012 prove-up hearing proceeded as to Meakim. Meakim, Carroll and Katz testified at the hearing.

T. On February 16, 2012, the State Court issued the Feb. 16th Judgment, in which it incorporated its prior Memorandum Opinion of November 3, 2010, made other findings and found Meakim liable for

(1) $528,179.63 in compensatory damages for tortious interference with contract and unjust enrichment;

(2) $5.4 million in compensatory damages for procuring breach of fiduciary duty, fraudulent transfer and unjust enrichment; and

---

2 The State Court subsequently reduced the amount of the Nov. 10th Judgment to $23,811,358.52.

3 I have assumed that the appeals are still pending. Were it otherwise, I would expect that Katz would have so advised the court.

4 Katz has filed adversary proceedings against both Meakim and Bayer seeking nondischargeability determinations against them. (Adv. Nos. 12-0393, 12-0500).

(3) $17,784,538.89 for punitive damages.

U. The Feb. 16th Judgment and the Nov. 10th Judgment, entered against different defendants, are for the same amounts.

V. Meakim appealed the Feb. 16th Judgment before filing his chapter 7 bankruptcy case. (See Katz Br. at 11).[5]

W. Relying primarily on the rulings in the State Court Action, Katz asserts that he is entitled to summary judgment based on the application of the doctrine of issue preclusion.[6]

---

[5] Again, while the summary judgment record is not explicit on this point, I have assumed that the appeal is still pending. See n.3, supra. There was only a short period of time between the entry of the Feb. 16th Order and the May 2, 2012 commencement of Meakim's bankruptcy case, the filing of which stayed the appeal by operation of 11 U.S.C. §362(a). See Assoc. of St. Croix Condo. Owners v. St. Croix Hotel Corp., 682 F.2d 446, 449 (3d Cir. 1982) (§362(a) "stays[s] all appeals in proceedings originally brought against the debtor, regardless of whether the debtor is the appellant or appellee"). It is hardly likely that the appeal could have been decided in that time frame.

[6] The doctrine of issue preclusion also is referred to as the doctrine of collateral estoppel. I will use the more modern term, issue preclusion.

Katz's basic issue preclusion theory is that the Debtor is precluded from relitigating issues determined in the judgment against two (2) entities that are in privity the Debtor, WSC and CSI. (Katz Br. at 10-11, 26-27). Katz posits that he has proved his case through issue preclusion because the elements of the causes of action in which he prevailed in the State Court are consonant with the elements of his nondischargeability cause of action under 11 U.S.C. §523(a)(2) and (a)(6). (Katz Br. at 28-31). See generally In re Kates, 2012 WL 6584994, at *10 (Bankr. E.D. Pa. 2012) (describing methodology employed by Katz as a "deductive" approach to the application of issue preclusion).

In support of his theory, Katz relies primarily on the two (2) State Court opinions. Katz has supplemented the opinions by attaching various documents to his Reply Memorandum designed to rebut arguments raised in the Debtor's response to the Motion. Without setting out all of the details, Katz offered some of this evidence for the purpose of establishing that the Debtor was in privity with two (2) defendants in the State Court Action, CSI and WSC. The merits of Katz's privity argument is discussed in n.11, infra.

* * * *

X. In this proceeding, the State Court Judgment and findings are entitled to the same preclusive effect in this court as they would receive in the courts of Illinois. See 28 U.S.C. §1738; Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Grimes v. Vitalink Communications Corp., 17 F.3d 1553, 1562-63 (3d Cir. 1994); In re Azeglio, 422 B.R. 490, 493-94 (Bankr. D.N.J. 2010).

Y. Under Illinois law, there are five (5) requirements for the application of issue preclusion:

(1) the issue decided in the prior proceeding is identical with the one presented in the later proceeding;

(2) the party against whom preclusion is asserted was a party or in privity with a party to the prior adjudication;

(3) there was a final judgment on the merits in the prior proceeding;

(4) the issue must have been actually litigated in the prior proceeding by the party against whom preclusion is sought; and

(5) a decision on the issue must have been necessary for the judgment in the first proceeding.

Compare Hulbert v. Charles, 938 N.E.2d 507, 512 (Ill. 2010); State Bldg. Venture v. O'Donnell, 950 N.E.2d 1122, 1127 (Ill. 2010); Gumma v. White, 833 N.E.2d 834, 843 (Ill. 2005), with Talarico v. Dunlap, 685 N.E.2d 325, 328 (Ill. 1997).[7]

Z. Three of the elements necessary for the application of issue preclusion under Illinois law

---

[7] There is also some indication in the applicable case law that the doctrine of issue preclusion is equitable in nature and that it "must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being [precluded]." Talarico, 685 N.E.2d at 328; see also Union Planters Bank, N.A. v. Thompson Coburn LLP, 935 N.E.2d 998, 1030-31 (Ill. App. Ct. 5th Dist. 2010).

presently are at issue:

(1) whether the issues determined in the State Court Action were actually litigated;

(2) whether a final judgment was entered against the Debtor;

(3) if a final judgment was not entered against the Debtor, whether a final judgment was entered against a party in privity with the Debtor.

AA. Although it is unclear under Illinois law whether, in the circumstances of this case, Illinois courts would treat the issues determined in the State Court Action as having been "actually litigated" for purposes of the issue preclusion doctrine,[8] it is perfectly clear that no "final judgment" has been entered against the Debtor in the State Court.[9]

---

[8] The parties expended considerable effort thoughtfully briefing this issue. Katz argued that I should predict that the Illinois Supreme Court would follow the federal common law rule articulated in In re Docteroff, 133 F.3d 210, 215-16 (3d Cir. 1997): that a party who participates extensively in prior litigation and who obstructs discovery and "deliberately prevents resolution of a lawsuit" will be treated as having actually litigated issues necessarily determined in a prior proceeding that terminates with a judgment entered as a sanction. The Debtor, of course, argued to the contrary. I find it unnecessary to decide this issue.

[9] In Illinois, the concept of "finality" for purposes of issue preclusion means that the trial court's order is no longer subject to review or modification on appeal. See Ballweg v. City of Springfield, 499 N.E.2d 1373, 1375 (Ill. 1986) ("For purposes of applying the doctrine of [issue preclusion], finality requires that the potential for appellate review must have been exhausted."); accord In re McVay, 461 B.R. 735 (Bankr. C.D. Ill. 2012) (dictum).

The "final order" preclusion requirement has not been satisfied because the State Court only entered a "default" and not a judgment for money damages against the Debtor. In the absence of a money judgment against the Debtor (akin to the judgments entered against Meakim, Carroll, WSC and CSI), no appealable is order was entered; therefore, the order of default was not a "final" order that could be appealed. See, e.g., Struck v. Cook County Public Guardian, 901 N.E.2d 946, 956 (Ill. App. Ct. 1st Dist. (2008) (Theis, J., concurring) (subject to certain exceptions, only a final order that "terminates the litigation between the parties so that, if affirmed, the trial court only has to proceed with the execution of the judgment" is appealable (citation omitted)); In re Guardianship of J.D., 878 N.E.2d 141, 143 (Ill. App. Ct. 1st 2007) (same).

If the default order entered against the Debtor was not appealable, a fortiori, it is an order that is subject to review or modification on appeal and, under Ballweg, it is not preclusive.

BB. In addition, assuming arguendo that a final judgment was entered against WSC,[10] (and further assuming that Katz were to prevail on the "actually litigated" requirement for the application of issue preclusion), Katz nonetheless is not entitled to summary judgment because there is a disputed issue of material fact whether the Debtor is privity with WSC.[11]

---

[10] I refer to WSC only, and not to CSI, because CSI appealed the Nov. 10th Judgment. WSC did not appeal.

[11] For the Debtor to be precluded from relitigating issues determined through the entry of judgment against WSC, he must be in privity with that entity. While there is no dispute that the Debtor was a principal of WSC, I am not convinced that Katz has established on summary judgment that the Debtor is in privity with that entity.

Illinois courts have utilized the Restatement of Judgments and Restatement of Judgments (Second) in evaluating whether privity exists for purposes of preclusion. State Farm Fire & Cas. Co. v. John J. Rickhoff Sheet Metal Co., 914 N.E.2d 577, 588-90 (Ill. App. Ct. 1st Dist. 2009).

There is no generally prevailing, single definition or test under Illinois law for determining whether a party is in privity with another for purposes of preclusion. See Atherton v. Conn. Gen. Life Ins. Co., 955 N.E.2d 656, 659 (Ill. App. Ct. 1st Dist. 2011). "Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action as if they were parties." Cooney v. Rossiter, 2012 WL 6721091, at *7 (Ill. Dec. 28, 2012) (quoting Restatement of Judgments §83 cmt. a, at 389 (1942)); accord In re Mondelblatt, 350 B.R. 1, 8 (Bankr. E.D. Pa. 2006) (under New Jersey law, "the concept of 'privity' is itself not an analytic tool used in determining whether a party should be bound by the results of prior litigation" but rather a term that "expresses the conclusion that a nonparty's relationship to the prior litigation is sufficient to justify the application of preclusion doctrines").

In determining whether privity exists, Illinois courts focus on whether the parties are "connected . . . in their interests, " and whether the party in the prior suit "adequately represent[ed] the same legal interests" of the party potentially subject to preclusion. Agolf, LLC v. Village of Arlington Heights, 946 N.E.2d 1123, 1132 (Ill. App. Ct. 1st Dist. 2011) (citation omitted). "Ultimately, a nonparty to a prior suit may be bound pursuant to privity if its interests 'are so closely aligned to those of a party' in that prior suit that the party was, essentially, a virtual representative of the nonparty." Id. (quoting Purmal v. Robert N. Wadington and Assocs., 820 N.E.2d 86, 95 (Ill. App. Ct. 1st Dist. 2004)). Cf. Taylor v. Sturgell, 553 U.S. 880, 900 (2008) (under federal common law, alignment of interest, by itself, is insufficient basis for application of issue preclusion).

Ultimately, the privity determination is an issue of fact, Atherton, 955 N.E.2d at 660, determined on a case-by-case basis, Agolf, 946 N.E.2d at 1132.

In support of his argument, Katz cites a number of Illinois decisions in which a

(continued...)

[11](...continued)
controlling principal of a closely held entity has been found to be in privity with and bound by litigation between that entity and other parties. Direct Marketing Concepts, Inc. v. Trudeau, 266 F. Supp. 2d 794, 796 (N.D. Ill. 2003); Apollo Real Estate Inv. Fund IV, LP v. Gelber, 935 N.E.2d 963, 973-74 (Ill. App. Ct. 1st Dist. 2010); see also Carr v. Tillery, 2010 WL 1963398, *9 (S.D. Ill. May 17, 2010) (applying federal common law). He asserts that these decisions stand for the proposition that, unqualifiedly, "[a] member of a limited liability company is in privity with the LLC." (Katz Br. at 11 n.5).

I do not read the case law as broadly as Katz. Certainly, a controlling principal of a closely held entity falls into "a category of relationships **that may establish privity**, for purposes of [preclusion]." Apollo Real Estate, 935 N.E.2d at 973-74 (emphasis added). However, "determining privity requires careful consideration of the circumstances of each case," and will be found only if the nonparty entity "adequately represented" the interests of the party to be precluded. Id. at 973. The rationale for finding privity between a controlling principal and a closely held entity, as well as the limitations of the legal principle, are explained in the Restatement (Second) of Judgments ("Restatement (Second)"):

> When the corporation is closely held, however, interests of the corporation's management and stockholders and the corporation itself generally fully coincide. By definition, the stockholders are few in number and either themselves constitute the management or have direct personal control over it. . . . For the purpose of affording opportunity for a day in court on issues contested in litigation, . . . there is no good reason why a closely held corporation and its owners should be ordinarily regarded as legally distinct. On the contrary, it may be presumed that their interests coincide and that one opportunity to litigate issues that concern them in common should sufficiently protect both.
>
> The problem then becomes one of fair opportunity to litigate the issue in question. When the corporation is the party to the litigation, a controlling owner who participates in the conduct of the litigation **ordinarily** has full opportunity and adequate incentive to litigate issues commonly affecting him and the corporation. . . . In these circumstances, therefore, the rule of issue preclusion prima facie should apply.

Restatement (Second) §59, cmt. e (emphasis added).

Katz points out that the Debtor is the principal of WSC and (with Kevin Meakim) is a principal of CSI. I do not understand the Debtor to dispute this. See In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 376 & 384-87 (Bankr. E.D. Pa. 2009) (same facts presented through the Debtor's testimony in bankruptcy SCW). However, in the circumstances presented here, I am unwilling to conclude that the Debtor's ownership and control of WSC, by itself and in the absence of additional evidence, justifies a finding that he is in privity with WSC.

It is most telling that the Debtor is a principal of both CSI and WSC. Judgments were entered against both entities in the State Court. Yet, CSI appealed the judgment (stripping the judgment of finality for preclusion purposes, see n.9, supra), while WSC did not. This strongly suggests that CSI had the incentive to contest Katz's claims while WSC did not. Accord Saxby's, 440 B.R. at 384-87
(continued...)

CC. For these reasons, the courts of Illinois would not apply the issue preclusion doctrine to prevent the Debtor from litigating any issues that were determined adversely to the Debtor in the State Court Action.

DD. Because the Motion's merit is dependent upon the application of issue preclusion, the Motion must be denied.

* * * *

It is therefore **ORDERED** that:

1. The Motion is **DENIED**.
2. A pretrial conference is **SCHEDULED** on **January 17, 2013, at 1:00 p.m., in Bankruptcy Courtroom No. 1, 900 Market Street, Philadelphia, PA.**
3. Counsel for the parties shall confer prior to the pretrial conference to determine whether they can submit a joint proposal regarding discovery and other pretrial deadlines. If they cannot do so, each party shall be prepared to offer proposed deadlines for a pretrial management order.

**Date: January 9, 2013**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

---

[11](...continued)
(Debtor's testimony in prior litigation in this court that CSI is an active business entity while WSC is an empty shell designed as a conduit for making investments in another entity that never took place). Consequently, bearing in mind that all inferences are drawn in favor of the party opposing summary judgment, e.g., Wright v. Corning, 679 F.3d 101, 105 (3d Cir. 2012); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995), I cannot find that Katz has met his burden of establishing that there is no material factual dispute on the issue of privity. It is simply not clear that, solely by virtue of his status as the principal of WSC, the Debtor had the "adequate incentive," Restatement (Second) §59, cmt. e, to direct WSC to litigate the issues common to him and WSC in the State Court Action so as to warrant a finding of privity and the application of issue preclusion.